**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BENJAMIN R. GEER, JR.,** | ) | |
| **Petitioner,** | ) | **Civil Action No. 06-38 Erie** |
| | ) | |
| **v.** | ) | **District Judge Sean J. McLaughlin** |
| | ) | **Magistrate Judge Susan Paradise Baxter** |
| **SUPERINTENDENT NISH, et al.** | ) | |
| **Respondents.** | ) | |
| | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

### II. REPORT

On November 3, 2000, Petitioner, Benjamin Richard Geer, Jr., was charged in the Court of Common Pleas of Crawford County with thirteen offenses that were all based upon allegations of sexual misconduct with a minor child. On January 7, 2002, he pleaded guilty to one count of Involuntary Deviate Sexual Intercourse ("IDSI") and one count of Aggravated Indecent Assault. He now raises the following five claims for federal habeas relief:

**Claim 1**    His conviction was obtained by means of a coerced confession in violation of the Fifth and Fourteenth Amendments, because the interrogating and arresting officer, Jack Q. Young, threatened him with a knife and forced him to confess to crimes he did not commit;

**Claim 2**    His subsequent guilty plea was not voluntarily or knowingly given, in violation of the Fifth Amendment, because under the terms of the plea agreement he was not to receive the mandatory minimum sentence, and because he was coerced into entering the plea since his suppression issue had never been properly presented to the Court;

1

**Claim 3**     His conviction was obtained as a result of evidence procured pursuant to an illegal arrest, in violation of the Fourth Amendment;

**Claim 4**     His conviction was obtained in violation of his right to counsel and right against self incrimination in violation of the Fifth and Sixth Amendments, because Young failed to read him his <u>Miranda</u> rights prior to subjecting him to a custodial interrogation, and because after he was read his <u>Miranda</u> rights Young continued to question him notwithstanding his request for an attorney;

**Claim 5**     He was denied effective assistance of counsel in violation of the Sixth Amendment:

      a.      because his first three attorneys (Bruce A. Barrett, Mark D. Stevens, and Gregory A. Keenan) did not file a motion to suppress his confession and failed to conduct an investigation to support his suppression claim (*i.e.*, obtain information regarding knives and swords owned by Young and about other instances in which Young illegally obtained coerced confessions);

      b.      because his fourth attorney, Terry L. Toomey:

            (1)     filed a motion to suppress but failed to set forth the "cause" that existed to excuse its late filing;
            (2)     advised Petitioner to enter a plea of guilty;
            (3)     did not file an appeal to the Superior Court;

      c.      his two post-conviction attorneys, Ross C. Prather and Edward Hathaway, provided him with deficient representation in numerous ways.

[<u>See</u> Amended Petition, ECF No. 26 at pp. 5-18; Memorandum, ECF No. 28 at pp. 17, 24-51].

**A.**     **Relevant Factual and Procedural Background**[1]

On or around August 12, 2000, the District Attorney of Crawford County charged Petitioner with thirteen criminal counts relating to the sexual abuse of a minor female between May 2000 and August

---

[1]     Respondents have submitted a two-volume Reproduced Record ("RR"), which contains relevant state court opinions and transcripts. The documents contained in each volume are continuously paginated and shall be cited to as "RR Vol. __ at p. __ ."

11, 2000. On that date, Cambridge Springs Chief of Police, Jack Q. Young, went to the residence of Petitioner's brother and told Petitioner that he had been accused of child molestation. Young asked Petitioner to go to the police station to discuss the allegations. Petitioner agreed to go to the station and Young handcuffed and searched him. Upon arrival at the police station, Young took off Petitioner's handcuffs and Petitioner sat in a chair in front of Young's desk, while Young sat behind his desk. Young presented Petitioner with a "non-arrest" form and told him that he was free to leave at any time. Petitioner signed the form at approximately 1:00 p.m. See RR Vol. 1 at pp. 477-78.

Young and Petitioner discussed the allegations. At some point during that conversation, Petitioner admitted that the alleged incidents happened, but he said that the victim had initiated the sexual contact between them. At that point, Young stopped the conversation and went to tell an assistant district attorney what Petitioner had stated. Young then returned to his office with a Miranda Warning sheet and advised Petitioner of his Miranda rights. Petitioner acknowledged that he understood those rights and agreed to talk to Young and have his statement recorded. Petitioner then gave an audio taped confession. RR Vol. 1 at p. 478.

The trial court appointed an attorney with the Public Defender's Office, Bruce A. Barrett, Esq., to represent Petitioner. By March 2001, Petitioner had become dissatisfied with Barrett's representation because he refused to file a motion to suppress Petitioner's confession. [ECF No. 28 at p. 21]. The trial court granted Petitioner's motion for new counsel and on March 23, 2001, Mark D. Stevens, Esq., was appointed to represent him. RR. Vol. 1 at p. 24.

On May 7, 2001, Petitioner entered a No-Contest plea to one count of IDSI and one count of Aggravated Indecent Assault. See RR Vol. 1 at pp. 25-70. On August 1, 2001, Stevens filed a motion to withdraw, in which he explained that Petitioner "has become convinced that current counsel did not work effectively to fulfill all of his obligations and take the necessary steps to protect his rights. He

maintains that he wishes to withdraw his no contest plea and move the case forward to trial."  RR Vol. 1 at p. 73.  On that same date, the trial court granted Stevens's motion and appointed Gregory A. Keenan, Esq., to represent Petitioner.  Keenan filed a motion to withdraw plea.  RR Vol. 1 at p. 76.  He also filed a motion to withdraw as counsel, in which he explained that Petitioner wanted him to file pre-trial motions about which he (Keenan) had "grave reservations."  RR Vol. 1 at pp. 78.

On November 1, 2001, the trial court granted Petitioner's motion to withdraw his plea and Keenan's motion to withdraw as counsel.  It scheduled Petitioner's trial for that month's trial term and appointed Terry L. Toomey, Esq., to represent him.  RR Vol. 1 at pp. 80-81.  In December 2001, Toomey filed a motion to suppress Petitioner's confession.  In that motion, a general allegation was made that Chief Young "intimidate[ed], coerc[ed], and implied threats of physical violation to be visited upon [Petitioner]" if he did not confess.  RR Vol. 1 at pp. 82-83.[2]

In response, the Commonwealth argued that, pursuant to Pennsylvania Rule of Criminal Procedure 579, Petitioner's pre-trial motions were due the year before, on or around December 3, 2000 (which was 30 days after his November 3, 2000, date of arraignment).  RR Vol. 1 at pp. 84-85.  The trial court agreed and on December 19, 2001, it entered an order quashing the suppression motion as untimely.  RR Vol. 1 at p. 86.

According to Petitioner, following the trial court's decision to quash his motion to suppress, Toomey advised him that "any trial would be un-winnable" and that he should "enter into some type of negotiated plea agreement with" the Commonwealth.  [ECF No. 28 at p. 25].  Petitioner accepted Toomey's advice and, on January 7, 2002, he pleaded guilty to one count of IDSI and one count of

---

[2]        There was no specific allegation that Chief Young had held a knife to Petitioner's throat and forced him to confess, which is the allegation Petitioner made in his state post-conviction proceedings and which he now makes before this Court.

Aggravated Indecent Assault.  <u>See</u> RR Vol. 1 at pp. 87-135 (1/7/02 Plea Hr'g Tr.).  The following was stated at the plea hearing:

> **Mr. Schwartz (the prosecutor):**     [Petitioner] will plead to one count of I.D.S.I., Count No. 6, and one count of aggravated indecent assault, Count No. 10.  The Commonwealth is not seeking either of the mandatories, not the five-year mandatory and not the two and half-year mandatory and there is no agreement as to sentence.
> - - -
> **The Court:**     [Petitioner], is that your understanding of the plea arrangement?
>
> **[Petitioner]:**  Yes.
>
> **The Court:**     Is that satisfactory with you?
>
> **[Petitioner]:**  Yes.
> - - -
> **The Court:**     [Explains the charge at Count 6 for I.D.S.I].  Is that what you did?
>
> **[Petitioner]:**  Yes.
>
> **The Court:**     That is a felony of the first degree, carries a maximum penalty of 20 years in jail and a maximum $25,000 fine and normally would carry a mandatory five-year sentence but that is being waived by the Commonwealth.  Do you understand that?
>
> **[Petitioner]:**  Yes.
>
> **The Court:**     [Explains the charge at Count 10 for Aggravated Indecent Assault].  Is that what you did?
>
> **[Petitioner]:**  Yes.
>
> **The Court:**     That is a felony of the second degree, carries a maximum penalty of 10 years in jail and a maximum $25,000 fine.  Do you understand that, sir?
>
> **[Petitioner]:**  Yes, sir.
>
> **The Court:**     So to the extent there is any mandatory sentence on that charge, that would be waived also by the Commonwealth.  Do you understand that?
>
> **[Petitioner]:**  Yes.
>
> **The Court:**     So the most you could receive would be 30 years in jail and a $50,000 fine.  Do you understand that?

**[The Petitioner]:**     Yes, Your Honor.

**The Court:**     Understanding all of that, you want to enter a plea of guilty to his – these two offenses?

**[Petitioner]:**  Yes, sir.

**The Court:**     And are you doing that of your own free will?

**[Petitioner]:**  Yes, sir.

**The Court:**     Anybody threatened you to get you to enter these pleas?

**[Petitioner]:**  No.

**The Court:**     Anybody, including your attorney, promised you anything other than what you have heard today in open court to get you to enter these pleas?

**[Petitioner]:**  No, sir.

**The Court:**     Are you satisfied with Mr. Toomey's representation in this case?

**[Petitioner]:**  Yes.

**The Court:**     Are you satisfied you have adequately discussed with him what might happen if you went to trial, any defenses you may have if you have any, all [sic] at least to the extent that you know you do not want to go to trial?

**[Petitioner]:**  Yes.
- - -
**The Court:**     Okay.  Did you make any statement to the police in which you admitted any involvement to these charges?

**[Petitioner]:**  Yes.

**The Court:**     Did you do that voluntarily?

**[Petitioner]:**  Yes.

**The Court:**     I can't remember, has there been any suppression?

**Mr. Schwartz:**     Yes.

**Mr. Toomey:** There was a Suppression Motion filed and quashed by the Commonwealth for its untimely filing.

**The Court:**   Okay.  Do you understand that if you want to pursue that issue in any way, that your confession was not voluntary, you would not be able to enter a plea in order to appeal that decision of your Suppression Motion being quashed.  Do you understand that?

**[Petitioner]:**   Yes.

**The Court:**   So do you understand by pleading today you give up your right to pursue that?

**[Petitioner]:**   Yes.

**The Court:**   Okay.  Any questions about that, sir?

**[Petitioner]:**   No, sir.

**The Court:**   Any questions about any of this?

**[Petitioner]:**   No, Your Honor.

**The Court:**   Okay.  Doing this of your own free will then because you did in fact do what we have talked about?

**[Petitioner]:**   Yes, Your Honor.

RR Vol. 1 at pp. 112-18.

Petitioner's sentencing hearing was held on March 28, 2002.  See RR Vol. 1 at pp. 122-35 (3/28/02 Sentencing Hr'g Tr.).  The court sentenced him to 5½ – 11 years of imprisonment at Count 6, and a consecutive term of 36 – 72 months imprisonment at Count 10, for an aggregate sentence of a minimum term of 8½ years and a maximum term of 17 years.  Each sentence was within the standard range.  RR Vol. 1 at p. 121.

On April 8, 2002, Toomey filed a motion for reconsideration of sentence, which the court denied on that same date.  RR Vol. 1 at pp. 138-39.  Because no direct appeal was taken, Petitioner's judgment of sentence became final on May 8, 2002, the date on which the 30-day period to file an appeal expired.  RR Vol. 2 at p. 189.  See also 42 Pa.C.S. § 9545(b)(3); Pa.R.A.P. 903(a); Swartz v. Meyers, 204 F.3d

7

417, 419 (3d Cir. 2000) (a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review).

On March 27, 2003, Petitioner filed a *pro se* petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.*[3] RR Vol. 1 at pp. 141-46. The PCRA Court appointed Ross C. Prather, Esq., to represent him. On August 21, 2003, Petitioner, through Prather, filed a Second Amended PCRA Petition. RR Vol. 1 at pp. 184-86. Therein, Petitioner raised the same ineffective assistance of counsel claims summarized above as Claim 5(a)-(b)(1) & (2).[4] RR Vol. 1 at pp. 184-86; see also RR Vol. 1 at pp. 461-64.

The PCRA Court held a series of evidentiary hearings on June 14, 2004, October 6, 2004, and December 17, 2004, at which Petitioner, Officer Young, and Attorneys Barrett, Stevens, Keenan, and Toomey testified. See RR Vol. 1 at pp. 216-325 (7/14/04 Hr'g Tr.); RR Vol. 1 at pp. 327-84 (10/6/04 Hr'g Tr. Part I); RR Vol. 1 at pp. 385-414 (10/6/04 Hr'g Tr. Part II); RR Vol. 1 at pp. 421-60 (12/17/04 Hr'g Tr. Part II).[5]

On June 14, 2005, the PCRA Court issued a Memorandum and Order denying post-conviction relief. RR Vol. 1 at pp. 472-90, Commonwealth v. Geer, No. 2000-1065, slip op. (C.P. Crawford Co. June 14, 2005). It explained that in order to prevail Petitioner would have show that the assistance he received from his attorneys cannot be said to have fallen within "the wide range of professionally

---

[3] The PCRA petition was docketed on March 31, 2003, but Petitioner maintains that he placed it "in the hands of prison officials" on March 27, 2003. [ECF No. 28 at pp. 8-9].

[4] Petitioner did not claim, as he does here in Claim 5(b)(3), that Toomey was ineffective for failing to file an appeal to the Superior Court. See RR Vol. 1 at pp. 152-54, 184-86, 461-64.

[5] The transcription of Part I of the December 17, 2004, evidentiary hearing is not contained in the record submitted to this Court.

competent assistance" demanded by the Sixth Amendment.  RR Vol. 1 at p. 476 (citing <u>Strickland v.</u>

<u>Washington</u>, 466 U.S. 688, 690 (1984)).  The law presumes that Petitioner's attorneys were effective:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too
> tempting for a defendant to second-guess counsel's assistance after conviction or adverse
> sentence, and it is all too easy for a court, examining counsel's defense after it has proved
> unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable.
> A fair assessment of attorney performance requires that every effort be made to eliminate
> the distorting effects of hindsight, to reconstruct the circumstances of counsel's
> challenged conduct, and to evaluate the conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the evaluation, a court must indulge a
> strong presumption that counsel's conduct falls within the wide range of reasonable
> professional assistance; that is, the defendant must overcome the presumption that, under
> the circumstances, the challenged action might be considered sound trial strategy.

<u>Strickland</u>, 466 U.S. at 689 (internal citations and quotations omitted).  The Court of Appeals for the

Third Circuit has explained that it is "only the rare claim of ineffective assistance of counsel that should

succeed under the properly deferential standard to be applied in scrutinizing counsel's performance."

<u>United States v. Kauffman</u>, 109 F.3d 186, 190 (3d Cir. 1997) (quoting <u>United States v. Gray</u>, 878 F.2d

702, 711 (3d Cir. 1989)).

      <u>Strickland</u> also requires Petitioner to show that he was prejudiced by his trial attorneys' alleged

deficient performance.  "This requires showing that counsel's errors were so serious as to deprive [him]

of a fair trial, a trial whose result is reliable."  <u>Strickland</u>, 466 U.S. at 687.  In other words, Petitioner

"must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different.  A reasonable probability is a probability sufficient to

undermine confidence in the outcome."  <u>Id.</u> at 694.

      The PCRA Court made extensive findings of fact in its Memorandum.  It did not credit

Petitioner's testimony and therefore rejected his factual contentions; it credited the contrary testimony of

Chief Young and Petitioner's four trial attorneys; and, it determined that Young had not threatened

Petitioner physically or verbally.  The court expressly stated:  "[Petitioner's] testimony significantly conflicts with that of Chief Young, particularly insomuch as [Petitioner] alleged that Young held a knife to his throat and scripted what he wanted [Petitioner] to state on the tape recording.  After having observed and examined the testimony of both individuals, we find that [Petitioner] is simply not credible and that his conflicting version of events is simply not believable."  RR Vol. 1 at p. pp. 476-84.  After setting forth its findings of fact, the PCRA Court denied Petitioner's claims of ineffective assistance.

Petitioner filed a *pro se* Notice of Appeal, as well as a motion to proceed *in forma pauperis* ("IFP") and for appointment of counsel.  The PCRA Court issued an Order granting him IFP status but also explaining to him that Attorney Prather was still his counsel and that he would remain so until and unless he was permitted to withdraw at some time in the future with leave of court.  RR Vol. 1 at pp. 494.  Thereafter, on July 29, 2005, Prather filed a Concise Statement of Matters Complained Of On Appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure.  RR Vol. 1 at pp. 497-98.

Petitioner's appeal was docketed in the Superior Court of Pennsylvania at No. 1271 WDA 2005.  For some reason, Prather was not listed as counsel of record.  See docket for Commonwealth v. Geer, No. 1271 WDA 2005 (Pa. Sup. Ct.).  Rather, Petitioner was listed as appearing *pro se*.  Nevertheless, on August 11, 2005, Prather sent a letter to Petitioner in which he stated that he would be filing the appellate brief on Petitioner's behalf.  RR Vol. 2 at p. 71.  Prather did not do so, however, and as a result the Superior Court issued an Order on November 3, 2005 in which it dismissed the appeal for failure to file a brief.  RR Vol. 1 at p. 500.  Petitioner states that he received the Superior Court's order four days later, on November 7, 2005.  [ECF No. 28 at p. 8].

Petitioner's first PCRA proceeding concluded on or around Monday, December 5, 2005. That is the last date upon which he could have filed a petition for allowance of appeal with the Supreme Court of Pennsylvania. Swartz, 204 F.3d 419-20.

Next, on or around February 12, 2006, Petitioner commenced proceedings in this Court by submitting to prison officials a petition for writ of habeas corpus. [See ECF No. 3 at p. 6]. Respondents moved to dismiss the petition for failure to complete exhaustion of his state-court remedies. [See ECF No. 10]. On September 13, 2006, this Court dismissed this case without prejudice because Petitioner indicated that he intended to attempt to get his PCRA appeal rights reinstated. [See ECF Nos. 19-20].

On or around September 14, 2006, Petitioner filed another *pro se* PCRA petition, in which he claimed that Attorney Prather was ineffective for failing to file a brief with the Superior Court at Docket No. 1271 WDA 2005. RR Vol. 2 at pp. 11-18. Petitioner also raised "entirely different issues from those previously raised" in his first PCRA petition. See RR Vol. 2 at p. 20. The PCRA Court denied all of Petitioner's claims except for his claim that Prather was ineffective for failing to file a brief to the Superior Court. See RR Vol. 2 at pp. 19-6, 33-35. It appointed Edward Hathaway, Esq., to represent Petitioner in order to litigate that claim. RR Vol. 2 at pp. 33-35. Hathaway filed an amended second petition requesting that Petitioner's ability to appeal the PCRA Court's denial of his first PCRA petition be reinstated *nunc pro tunc*. RR Vol. 2 at pp. 37-46.

On January 30, 2007, the PCRA Court issued an order granting the amended second petition. It held: "It appears and it is not disputed by counsel that [Petitioner] is entitled to PCRA relief in that he is entitled to file a notice of appeal to the Superior Court nunc pro tunc with regard to the issues raised and denied by the Court in his first PCRA petition so that the Superior Court will have an opportunity to review those issues on the merits." RR Vol. 2 at p. 79.

Petitioner's counseled *nun pro tunc* appeal followed. It was docketed at the Superior Court at No. 349 WDA 2007. On November 7, 2007, the Superior Court issued an Opinion in which it quashed the appeal on the basis that the second PCRA proceeding, upon which the order granting *nunc pro tunc* relief was predicated, was untimely. RR Vol. 2 at pp. 186-92 (Commonwealth v. Geer, No. 349 WDA 2007, slip op. (Pa.Super.Ct. Nov. 7, 2007)). It explained that the PCRA mandates that any PCRA petition, including a second or subsequent petition, must be filed within one year of the date a defendant's sentence becomes final. 42 Pa.C.S. § 9545(b)(1). The Superior Court did find that Prather's failure to file an appellate brief, which resulted in the dismissal of his prior appeal on November 3, 2005, fell within the ambit of § 9545(b)(1)(ii)'s exception to the one-year statute of limitations. However, it ruled that Petitioner could not rely upon this exception because he failed to file his second PCRA petition within 60 days of the date the claim could have been presented, as required by § 9545(b)(2). RR Vol. 2 at pp. 189-92 (citing Commonwealth v. Bennett, 930 A.2d 1264 (Pa. 2007)).[6] Petitioner, through Attorney Hathaway, filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which was denied on April 22, 2008.

---

[6] Prior to the Pennsylvania Supreme Court's 2003 decision in Commonwealth v. Robinson, 837 A.2d 1157 (Pa. 2003), the Superior Court employed the "extension theory" in order to ameliorate the effect that the PCRA's statute of limitations would have on a petitioner who had had an appeal dismissed because of counsel's dereliction. Under this theory, when a prior appeal had been dismissed because counsel had failed to file a brief, the Superior Court would construe a subsequent PCRA petition as an extension of the timely filed, but previously dismissed, first PCRA petition – not as a second or subsequent PCRA petition. See Bennett, 930 A.2d at 1268 (summarizing the extension theory). In Robinson, the Pennsylvania Supreme Court explicitly rejected the Superior Court's employment of the "extension theory." It held that the Superior Court could not circumvent the PCRA limitations period (which is jurisdictional) by creating the fiction that a second or subsequent PCRA petition was an extension of a previously filed first petition. Robinson, 837 A.2d at 1161-63. In light of its holding, the Pennsylvania Supreme Court recommended that the Superior Court revise its administrative procedures to address the practices that had lead it to create the extension theory in the first place. It suggested that, instead of dismissing an appeal without prejudice for failure to file a brief, the Superior Court could remand the first PCRA petition for a hearing on counsel's failure and the advisability of sanctioning counsel or appointing new counsel. Robinson, 837 A.2d at 1162-63. That procedure obviously was not followed in this case, perhaps because Petitioner was listed as proceeding *pro se* on the Superior Court's docket at appeal No. 1271 WDA 2005. This Court will not attribute that circumstance to Petitioner, however, because the PCRA Court had expressly stated that Prather was Petitioner's counsel for the appeal and because Prather had assured Petitioner that he would file a brief to the Superior Court.

Next, Petitioner filed a *pro se* motion to reopen this federal habeas proceeding, which this Court granted. [ECF No. 22]. On February 23, 2009, he filed an Amended Petition for Habeas and Memorandum Of Law In Support. [ECF Nos. 26-28]. Respondents have filed their Answer [ECF No. 29], to which Petitioner has filed his Reply [ECF No. 31], and the case is now ripe for review.

**B.** **Discussion**

    **(1)** **The Federal Habeas Corpus Statute**

This proceeding is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that Petitioner's judgment of sentence was obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a).

In 1996, Congress enacted AEDPA, which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). It "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations." Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004); see also Lewis v. Horn, 581 F.3d 92, 109-18 (3d Cir. 2009), *cert. denied sub nom.* No. 09-10741, --- S.Ct. --- , 2010 WL 1942210 (Oct. 4, 2010).

As codified at 28 U.S.C. § 2254(d), AEDPA provides deference to the state court's legal decisions when the state court has adjudicated a claim on the merits. "[F]or the purposes of [§]2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a

13

procedural, or other, ground." Thomas v. Horn, 570 F.3d 105, 117 (3d Cir. 2009), *cert. denied sub nom.* 130 S.Ct. 1879 (2010).

Importantly, AEDPA further provides that factual determinations made by the state court are entitled to deference under § 2254(e)(1). Section 2254(e)(1) states: "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." See also Lambert, 387 F.3d at 235-39; Lewis, 581 F.3d at 110-11 (citing Fahy v. Horn, 516 F.3d 169, 181 (3d Cir. 2008)); Thomas, 570 F.3d at 116. See also Weeks v. Snyder, 219 F.3d 245, 259 (3d Cir. 2000) (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983), for the proposition that habeas review does not permit a federal court to redetermine the credibility of witnesses whose demeanor has been observed by the state court).

### (2)    AEDPA's Statute Of Limitations

In their Answer, Respondents contend that this case must be dismissed because, even considering this case to have been filed when Petitioner originally commenced it in February 2006, it is untimely under AEDPA's statute of limitations, which is codified at 28 U.S.C.§ 2244(d).

AEDPA requires, with a few exceptions not applicable here, that habeas corpus petitions under 28 U.S.C. § 2254, be filed within one year of the date the petitioner's judgment of sentence became final. 28 U.S.C. § 2244(d)(1)(A).[7] It also provides that: "The time during which *a properly filed* application

---

[7]    Nothing in the record in this action indicates that Petitioner is entitled to take advantage of any of the other provisions triggering the one-year limitations period. His petition for writ of habeas corpus does not indicate that he suffered any impediment to filing his federal petition. 28 U.S.C. § 2244(d)(1)(B). He has not asserted that his claims are based on a new constitutional right recognized by the Supreme Court of the United States and made retroactive to cases on collateral review. Id. at § 2244(d)(1)(C). He has not shown that his claims are based upon a factual predicate that could not have been discovered through the exercise of due diligence. Id. § 2244(d)(1)(D).

for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending *shall not be counted toward any period of limitation* under this subsection." Id. § 244(d)(2) (emphasis added).

As set forth above, Petitioner's judgment of sentence became final on May 8, 2002; therefore, the one-year period for filing his federal habeas petition began to run on that date. Petitioner filed his first PCRA petition on or around March 27, 2003. Thus, that first PCRA petition tolled AEDPA's statute of limitations after 323 days had expired (from May 8, 2002 to March 26, 2003).

On November 3, 2005, the Superior Court dismissed Petitioner's appeal challenging the denial of his first PCRA petition. He had 30 days (until Monday, December 5, 2005) in which to file a petition for allowance of appeal to the Supreme Court of Pennsylvania. The PCRA proceedings is deemed to be pending during this time (even though an appeal was not filed). See, e.g., Swartz, 204 F.3d at 419-20. Petitioner admits that he received notice of the Superior Court's order on November 7, 2005, well in advance of the date his petition for allowance of appeal was due.

The PCRA petition continued to toll the limitations period through December 5, 2005. After that date, AEDPA's limitations period began to run again, and Petitioner, having approximately 42 days remaining before AEDPA's statute of limitations expired, had until on or around January 17, 2006, to file a timely federal habeas petition with this Court. Petitioner did not initiate proceedings in this Court until, at the very earliest, February 12, 2006.

Petitioner admits that he commenced this action outside of AEDPA's limitations period but contends that he is entitled to equitable tolling. [ECF No. 28 at p. 9]. Recently, the United States Supreme Court held that AEDPA's statute-of-limitation period "is subject to equitable tolling in appropriate cases." Holland v. Florida, — U.S. — , 130 S.Ct. 2549, 2560 (2010). The United States Court of Appeals for the Third Circuit has held that "[e]quitable tolling is proper only when the

principles of equity would make the rigid application of a limitation period unfair." Miller v. New Jersey State Dept. of Corr., 145 F.3d 616, 618-19 (3d Cir. 1998) (internal citations, quotations, and punctuation omitted). It also has cautioned that "courts should be sparing in their use of this doctrine, applying equitable tolling only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." Lacava v. Kyler, 398 F.3d 271, 275-76 (3d Cir. 2005) (internal quotations, citations, and bracketed text omitted).

A petitioner is entitled to equitable tolling only if he shows both that (1) he has been pursuing his rights diligently, and (2) *some extraordinary circumstance stood in his way and prevented timely filing*. Holland, 130 S.Ct. at 2562. Petitioner admits that he received notice of the Superior Court's order dismissing his first PCRA appeal on November 7, 2005, which was several weeks before the date his petition for allowance of appeal to the Pennsylvania Supreme Court was due, and more than two months before the January 17, 2006, expiration of AEDPA's statute of limitations. Nothing extraordinary occurred that prevented him from meeting AEDPA's deadline.[8] He did not file his habeas petition until at the earliest February 12, 2006. Such inaction on Petitioner's part fails to demonstrate the diligence required for equitable tolling. Compare Holland, 130 S.Ct. at 2565 ("[T]he *very day* that Holland

---

[8]     The Third Circuit Court of Appeals has held that "[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." Merritt v. Blaine, 326 F.3d 157, 169 (3d Cir. 2003) (quoting Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001)); see also Schlueter v. Varner, 384 F.3d 69, 76-78 (3d Cir. 2004) (attorney's misconduct did not constitute extraordinary circumstances where attorney failed to keep promise to file PCRA petition on time and failed to communicate further with petitioner about the status of the case); Johnson v. Hendricks, 314 F.3d 159, 163 (3d Cir. 2002) (equitable tolling is not warranted where the petitioner relied on erroneous advice from his state public defender that he had one year from the date of denial of post-conviction relief to file his federal habeas petition). Although extraordinary cases of serious misconduct by an attorney may constitute grounds for equitable tolling, tolling is not warranted for "a 'garden variety' claim of attorney negligence." Holland, 130 S.Ct. at 2564. Whether a particular situation warrants tolling must be made in a fact-specific, case-by-case determination. Id. at 2563. Here, the record shows that Attorney Prather did not file a brief to the Superior Court, which resulted in Petitioner's appeal being dismissed. Although Prather obviously should have filed a brief, his actions did not prevent Petitioner from filing a timely federal habeas petition, since Petitioner received notification of the Superior Court's dismissal order long before the expiration of AEDPA's statute of limitations.

discovered that his AEDPA clock had expired due to [his attorney's] failings, he prepared his own habeas petition pro se and promptly filed it with the District Court.") (emphasis in original).

Based upon all of the foregoing, this case should be denied because all of Petitioner's claims are barred by AEDPA's statute of limitations.


### (3)　Petitioner's Claims

In the alternative, even if this Court were to conclude that Petitioner's federal habeas claims were not time-barred, all of his claims should still be denied.


### (a)　Claims Not Cognizable In Federal Habeas

In Claim 3, Petitioner raises a Fourth Amendment claim that his confession stemmed from an illegal arrest. A state court prisoner's Fourth Amendment claims are not cognizable in federal habeas corpus when, as is the case here, he had a full and fair opportunity to litigate those claims in state court. Stone v. Powell, 428 U.S. 465, 481-82 (1976). See, e.g., Deputy v. Taylor, 19 F.3d 1485, 1491 (3d Cir. 1994); Gilmore v. Marks, 799 F.2d 51, 54-57 (3d Cir. 1986).

In Claim 5(c), Petitioner contends that he is entitled to habeas relief because his two PCRA attorneys, Prather and Hathaway, were ineffective. Ineffectiveness of PCRA counsel does not provide a ground for relief in federal habeas proceedings. That is because such ineffectiveness implicates no federal constitutional right given that Petitioner had no such right to counsel at that stage in the proceedings. Coleman v. Thompson, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.") (citations omitted); see, e.g., Pursell v. Horn, 187 F.Supp.2d 260, 373 (W.D.Pa. 2002) ("the due process clause does not require counsel for state post-

conviction proceedings, whether state law requires such counsel or not.").  In addition, to the extent that Petitioner is seeking federal habeas relief on the basis of what occurred generally during either of his PCRA proceedings, such claims are likewise not cognizable.  As the Third Circuit Court of Appeals has explained:

> The federal courts are authorized to provide collateral relief where a petitioner is in state custody or under a federal sentence imposed in violation of the Constitution or the laws or treaties of the United States.  28 U.S.C. §§ 2254, 2255.  *Thus, the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation.*

Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) (internal citations omitted) (emphasis added); see also Lambert, 387 F.3d at 247 ("[A]lleged errors in collateral proceedings are not a proper basis for habeas relief from the original conviction.").

Based upon all of the foregoing, Claim 3 and Claim 5(c) should be denied because they are not cognizable in federal habeas.


**(b)  Ineffective Assistance Of Counsel Claims That Were Raised In the First PCRA Proceeding**

Petitioner alleges that Chief Young held a knife to his throat and forced him to falsely admit in an audiotaped confession that he molested the victim.  He also alleges that Young edited his taped confession.  In Claim 5(a), he contends that his first three attorneys, Barrett, Stevens, and Keenan, were ineffective for failing to file a motion to suppress his confession on these bases.  In Claims 5(b)(1) & (2), he alleges that Toomey was ineffective because:  (1) although he did file a motion to suppress, he did not state the "cause" for which the trial court could and should hear the late motion; and, (2) his

failure to get Petitioner's confession suppressed left him with no choice but to plead guilty to crimes which he now asserts he did not commit.

As set forth above, Petitioner raised Claims 5(a)-(b)(1) & (2), in the first PCRA proceeding. The PCRA Court denied them on the merits, and the Superior Court dismissed Petitioner's subsequent appeal at No. 1271 WDA 2005 for failure to file a brief. Respondents contended that these claims are procedurally defaulted because the Superior Court dismissed them on procedural grounds. This Court is hesitant to attribute that default to Petitioner, however, because the PCRA Court expressly informed him that Attorney Prather was Petitioner's counsel for the appeal and because Prather had assured Petitioner that he would file a brief to the Superior Court. Moreover, it may be debatable whether the procedural rule subsequently applied by the Superior Court to deny Petitioner the opportunity to reinstate his first PCRA appeal was "firmly established and regularly followed" at the time Petitioner committed his alleged default (which was around November 2005 to January 2006). That is because Commonwealth v. Bennett, 930 A.2d 1264 (Pa. 2007), which is the case the Superior Court relied upon when it quashed Petitioner's appeal in which he sought the reinstatement of his first PCRA appeal rights, was decided well after Petitioner's alleged default. See Ford v. Georgia, 498 U.S. 411, 423-24 (1991) (a state procedural rule is "adequate" if it is "firmly established and regularly followed" at the time that the alleged procedural default occurred).

This Court need not undertake the lengthy analysis of state law that would be required to determine the applicability of the procedural default doctrine with respect to Claims 5(a)-(b)(1) & (2). See Lines v. Larkin, 208 F.3d 153, 165 (3d Cir. 2000) (noting that "federal courts should be most cautious before reaching a conclusion dependent upon an intricate analysis of state law that a claim is procedurally barred."). Instead, this Court may review these claims on the merits under the authority set

forth in 28 U.S.C. § 2254(b)(2), which provides that a federal court may deny a petitioner's claim on the merits notwithstanding his failure to comply with state-law requirements.

Since the Superior Court dismissed Claims 5(a)-(b)(1) & (2) on purely procedural grounds (failure to file a brief), it did not "adjudicate" them on the merits for purposes of applying AEDPA's legal deference under § 2254(d). Moreover, it does not appear that this Court may apply legal deference under § 2254(d) to the PCRA Court's *legal* conclusions. See Thomas, 570 F.3d at 115-16 ("Here, the Pennsylvania Supreme Court decided Thomas' claims on purely procedural, not substantive, grounds. This decision stripped the PCRA court's substantive determination of Thomas' claims of preclusive effect."). Importantly, however, the PCRA Court's factual findings are entitled to deference. 28 U.S.C. § 254(e)(1), Taylor v. Horn, 504 F.3d 416, 429 (3d Cir. 2007) (regardless of whether a given claim was adjudicated on the merits and is subject to the standard of review set forth at § 2254(d), a state court's factual determinations are presumed to be correct under AEDPA pursuant to 28 U.S.C. § 2254(e)(1)); Weeks, 219 F.3d at 259.

The PCRA Court's factual findings are fatal to Petitioner's claims. After hearing testimony from Petitioner, Chief Young, and Attorneys Barrett, Stevens, Keenan, and Toomey, it expressly found as fact that: Petitioner was not credible; Chief Young did not verbally or physically threaten Petitioner in any way, including with a knife or a gun;[9] Petitioner's confession was made knowingly and voluntarily and

---

[9]     The PCRA Court noted that the Young was a collector of knives and did have one knife displayed on his desk. It determined that Young "never touched the knife during the period [Petitioner] was present, but this knife might have been discussed by [him] and [Petitioner]. In the course of any discussions about the knife, [Petitioner] was never threatened with it." RR Vol. 1 at pp. 477-78. The PCRA Court also noted that Barrett testified that when he met with Petitioner in September 2000, Petitioner never mentioned a knife and did not state that he had been coerced in any way to give his confession. Barrett testified that he did not see any basis for a suppression motion. Stevens testified that although it was clear to him that Petitioner was alleging that his statement had been coerced, he questioned the veracity of those allegations because they built over time. He further testified that at first Petitioner had not said anything to him about a knife being used in a threatening manner toward him by Young. In fact, when Petitioner initially brought up the topic of the knife, he mentioned only that Young was a knife collector and had shown him his collectible knife. Toomey testified that he did not recall Petitioner ever telling him that Young had placed a knife to his throat. RR Vol. 1 at pp. 479-83.

in the absence of any coercion; Petitioner was not told by Young what to say in his taped-recorded confession; and, the recording was not edited in any manner by anyone. RR Vol. 1 at pp. 477-78, 487-89. It further found as fact that:

> Attorney Barrett testified that [Petitioner] never told him how he had been coerced and never told him that Chief Young had scripted the statement. He further testified that, upon meeting with [Petitioner] for the first time, [Petitioner] did not tell him that he had been threatened by Young with a knife or gun. Attorney Stevens testified that the allegations of the threatening use of the knife and the scripting of the statement were not raised by [Petitioner] during early interviews. He indicated that from interview to interview, [Petitioner] kept changing his story and including more severe sets of facts. Attorney Keenan testified that he had "grave reservations" about pursuing [Petitioner's] suppression issues. Finally, Attorney Toomey testified that he did not recall [Petitioner] mentioning to him that Chief Young had threatened [him] with a knife to the throat or that the Chief had scripted the statement.

RR Vol. 1 at p. 487.

Because this Court must apply a presumption of correctness to the PCRA Court's findings pursuant to § 2254(e)(1), Petitioner cannot prevail on his ineffective assistance of counsel claims. Barrett, Stevens, and Keenan were not ineffective for deciding against filing a meritless motion to suppress. See, e.g., Parrish v. Fulcomer, 150 F.3d 326, 327-29 (3d Cir. 1998) (counsel cannot be found to be ineffective for failing to assert a meritless claim). Moreover, Petitioner was not prejudiced by Toomey's failure to establish "cause" for the late filing of the motion to suppress since the trial court would not have granted the motion had it been accepted for consideration. Petitioner likewise was not prejudiced by Toomey's advice to plead guilty to Counts 6 and 10, as there were no viable grounds to suppress his confession and therefore he would not have had a better outcome had he proceeded to trial. Strickland, 466 U.S. at 694 (to establish prejudice a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

The PCRA Court did conclude that when Chief Young first took Petitioner to the police department to discuss the allegations against him, he was in custody from the commencement of his interrogation and therefore any pre-<u>Miranda</u> warning statements were obtained in violation of <u>Miranda</u>'s requirements. It determined, however, that none of Petitioner's counsel were ineffective for failing to raise this issue in a motion to suppress because Petitioner's subsequent post-warning confession was not tainted by the preceding <u>Miranda</u> violation. It found "that suppression of [Petitioner's] post-<u>Miranda</u> statements would not have been warranted. Those statements were knowingly and voluntarily made in the absence of any undue coercion." RR Vol. 1 at pp. 484-89 (citing <u>Commonwealth v. DeJesus</u>, 787 A.2d 394 (Pa. 2001), which relied upon <u>Oregon v. Elstad</u>, 470 U.S. 298 (1985)).

In <u>Oregon v. Elstad</u>, the United States Supreme Court addressed whether an uncoerced confession given after <u>Miranda</u> warnings could be admissible when the suspect had previously been subjected to unwarned questioning. 470 U.S. at 309 (explaining admissibility of warned confession depends on whether confession was "knowingly and voluntarily made"). The defendant in that case first made an incriminating statement placing himself at the crime scene when answering police questions at his home. <u>Id.</u> at 301. Shortly thereafter, during a warned interrogation at the police station, he waived his rights and confessed. <u>Id.</u> In large part because the police did not use coercion or improper tactics to obtain the first statement, <u>see id.</u> at 315, and because the failure to properly warn the defendant before he made the first statement was likely a mistake rather than a deliberate police tactic, <u>see id.</u> at 315-16, the Court determined that the confession was not tainted and was voluntary, <u>see id.</u> at 318.

When the Court next considered a two-step questioning procedure, the result was different. In <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004), the Court confronted a situation in which the police had *adopted an official policy* of eliciting a confession before providing <u>Miranda</u> warnings. A plurality of the Court concluded that in those circumstances, <u>Miranda</u> warnings could not function effectively

because a suspect would not believe that he really had a right to remain silent after having confessed. Missouri v. Seibert, 542 U.S. at 613-14. In the words of the plurality opinion, "[u]pon hearing warnings only in the aftermath of interrogation and just after making a confession, a suspect would hardly think he had a genuine right to remain silent, let alone persist in so believing once the police began to lead him over the same ground again." Id. at 613. The plurality distinguished Oregon v. Elstad, because in that case the first questioning, at defendant's home, was not inherently coercive, id. at 614-15, because there was little, if any, "causal connection" between the first unwarned statement and the later confession, and because the failure to advise defendant of his Miranda rights was a "good-faith Miranda mistake" that could be corrected by subsequent careful warnings, id. at 615. Justice Kennedy concurred, asserting that Oregon v. Elstad should control the analysis unless police deliberately employed a two-step strategy. Id. at 622 (Kennedy, J., concurring). In addition, he suggested that even if the use of a two-step approach was deliberate, curative measures, including "a substantial break in time" between the two statements or an added warning explaining that pre-warning statements are not admissible, could serve to break the causal connection and permit admission of the second statement. Id.

Barrett, Stevens, Keenan, and Toomey each represented Petitioner years before Missouri v. Seibert was decided in 2004. Therefore, this Court need not address the issue of whether Petitioner could have obtained any relief under the Supreme Court's judgment in that case because at the time his attorneys made their challenged decisions, it had not been decided. See Government of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989) ("there is no general duty on the part of defense counsel to anticipate changes in the law").

In conclusion, based upon all of the foregoing, Claims 5(a)-(b)(1) & (2) should be denied.

### (c)     The Remainder Of Petitioner's Claims Must Be Denied

In Claims 1 through 4, Petitioner makes constitutional challenges to his judgment of sentence that are separate from his ineffective assistance of counsel claims.  Also, in Claim 5(b)(3) he claims that Toomey was ineffective for failing to file a direct appeal.  None of these claims were raised properly to the state courts.  During his first and only proper PCRA proceeding, the only claims that were before the state court were those claims of ineffective assistance of counsel raised herein as Claims 5(a)-(b)(1) & (2).  Because Petitioner failed to exhaust his other claims in state court, they are procedurally defaulted. O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1991); Lines, 208 F.3d at 166 (when exhaustion of a claim now would be futile because the state court would deem it to be waived or untimely, the claim is procedurally defaulted for federal habeas review).

A petitioner whose constitutional claim has not been addressed on the merits due to the failure to comply with a state procedural rule can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.*, that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice."  Coleman, 501 U.S. at 750; see also Murray v. Carrier, 477 U.S. 478, 488, 494 (1986).  Petitioner has the burden of demonstrating "cause and prejudice," Coleman, 501 U.S. at 750; see e.g. Lines, 208 F.3d at 160, and he cannot meet that burden here because he cannot show, *inter alia*, any actual prejudice.  A petitioner also can overcome a procedural default under the "fundamental miscarriage of justice" exception.  This exception provides that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]"  Schlup v. Delo, 513 U.S. 298, 316 (1995).  See also House v. Bell, 547 U.S. 518 (2006); Houck v. Stickman, --- F.3d ---, 2010 WL 4629469, *4-5 (3d Cir. Nov. 17, 2010); Hubbard v. Pinchak, 378 F.3d 333, 339-41

(3d Cir. 2004). <u>Coleman</u>, 501 U.S. at 750-51. It only applies only in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. <u>Id.</u>; <u>Hubbard</u>, 378 F.3d at 339-40. It is not applicable to this type of case, in which there is no extraordinary circumstances and in which Petitioner pleaded guilty.

Additionally, Claims 1, 3 and 4 should be denied because, pursuant to the Supreme Court's decisions in <u>Tollet v. Henderson</u>, 411 U.S. 258 (1973) and <u>Mabry v. Johnson</u>, 467 U.S. 504 (1984), Petitioner's guilty plea – which he expressly stated during the plea hearing was knowing, intelligent, and voluntary – superseded and rendered immaterial any alleged constitutional deficiency that preceded it. <u>Tollet</u>, 411 U.S. at 267 ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel[.]"); <u>Mabry</u>, 467 U.S. at 508-09 ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked…. It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired.").

Based upon all of the foregoing, Claims 1 through 4 and Claim 5(c) should be denied.

### <u>C.</u>    <u>Certificate of Appealability</u>

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the

denial of a constitutional right." Where the district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Applying those standards here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied. Accordingly, a certificate of appealability should be denied.


**III.    CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the Amended Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, Petitioner is allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  December 2, 2010
cc:      The Honorable Sean J. McLaughlin
         United States District Judge